On June 17, 1999, the applicant, Henry Skaggs, Sr., pursuant to App.R. 26(B) and State v. Murnahan (1992), 63 Ohio St.3d 60,584 N.E.2d 1204, applied to reopen his appeal in State of Ohio v.Henry Skaggs, Sr. (May 29, 1999), Cuyahoga App. No. 56714, unreported. The State of Ohio never filed a response. For the following reasons, this court grants the application and reinstates the appeal to its docket.
 FACTUAL AND PROCEDURAL BACKGROUND
On August 23, 1988, the Grand Jury charged that Mr. Skaggs committed felonious assault on and raped Kimberly Cavin on or about March 29, 1988, and that he raped her again on or about April 7, 1988. Attorney Peter Fletcher represented Mr. Skaggs at trial and on appeal. As recognized in the transcript and a journal entry, Mr. Skaggs waived his right to a jury trial. On October 24, 1988, his trial to the court commenced.
The trial revealed the following evidence. Kimberly Cavin, born April 30, 1972, was fifteen years old in early 1988. At birth she suffered a lack of oxygen to the brain and has been slightly retarded since then. On or about March 25, 1988, Kimberly befriended Sherry Chambers, who was the fifteen year old stepdaughter of Henry Skaggs and who had just returned to school after having a baby. The two girls decided to cut school. That evening Sherry presented Kimberly to the Skaggs as her friend and persuaded them to allow Kimberly to stay overnight. Over approximately the next two weeks Kimberly never returned home and stayed at the Skaggs' house. The evidence further showed that the girls continued to cut school.
Kimberly testified that during the day on March 29, 1988, she was in the first floor bathroom when Henry Skaggs entered the bathroom with a knife. He told her that if she did not have sex with him, he would kill her. She further testified that he took her into his first floor bedroom. There he forced her to strip; he kept holding the knife to her throat. He then raped her. Kimberly testified that she told him to quit and tried to scream for Sherry, but Mr. Skaggs put a pillow over her face. During the rape Kimberly cut her hand by grabbing for the knife. She stated that the ordeal lasted about an hour and ended when Sherry came downstairs. She further testified that she did not call her father or leave because she was too scared.
Kimberly then testified that on or about April 7 or 8, at night she was alone in an upstairs bedroom, when Mr. Skaggs entered the room and woke her up. He made her take off her pants and raped her again. This ordeal lasted only about ten minutes.
Kimberly admitted that in early April the Skaggs discovered she was a runaway and told her to leave. She indicated that Sherry would let her back in after she left. Her testimony was also unclear as to whether she stayed continuously at the Skaggs' house or whether she would report to school and then sneak back to the house.
On April 10 or 11, 1988, Kimberly went to the library. By coincidence her father also went there and found her. When she got home, she told her father that Mr. Skaggs had raped her. He reported this to the police and took her to the hospital. The police officer noted that Kimberly did have a scar on her hand. The transcript is silent on the contents of the medical records.
For the defense various members of the Skaggs household testified, including Mr. Skaggs. The thrust of the defense was that the rapes could not have happened when stated in the indictments because Kimberly was not in the house during the day on March 29, 1988, that Mr. Skaggs was continually in and out of the house on various jobs or looking for work, and that by the time alleged for the second rape, the Skaggs had ordered Kimberly from their home and they were otherwise occupied that night. For example, defense counsel introduced school records which showed that Kimberly had at least reported for school during the relevant time. Also the babysitter for Sherry's newborn testified that she caught Kimberly and Sherry cutting school only once. Mr. Skaggs testified that he did not rape Kimberly.
After hearing the evidence the trial judge entered an order finding Mr. Skaggs not guilty of rape as charged in count one and guilty of felonious assault as charged in count two. The judge sentenced Mr. Skaggs to seven to twenty-five years.
Mr. Skaggs' trial counsel timely appealed. He argued that the court's verdict was contradictory. Count One charged Mr. Skaggs with rape on March 29, 1988, and the felonious assault was part of the same incident. It is illogical to find Mr. Skaggs guilty of that felonious assault, but not guilty of the corresponding rape. Counsel also argued that the verdict was against the manifest weight of the evidence.
In May 1990 this court dismissed the appeal and remanded the case for further proceedings for lack of a final, appealable order. The trial court's journal entry did not resolve the second count of rape.
In an entry journalized July 26, 1990, the trial court vacated its prior orders of conviction and sentencing as clerical errors. The court then found Mr. Skaggs guilty of Count Two, the April 7 rape, and not guilty of Counts One and Three, the rape and felonious assault of March 29, 1988. The court then reimposed a sentence of seven to twenty-five years, to be served concurrently with the sentence in State v. Skaggs, Cuyahoga County Common Pleas Court Case No. Cr. 226051.[1] This journal entry makes no indication that either Mr. Skaggs or his attorney were present for the hearing and re-sentencing. Nor does the record contain an entry ordering Mr. Skaggs from prison to be present at the hearing in which the court found him guilty of a previously unresolved charge, not guilty of a charge for which the court had earlier found him guilty and sentenced him.
After the trial court entered a final, appealable order, Mr. Skaggs' attorney never filed another notice of appeal, never moved to reinstate the appeal or take any other action on behalf of Mr. Skaggs.
Subsequently, Mr. Skaggs tried to pursue his legal rights by first obtaining the necessary records. He alleges that he was told that the records for his case no longer existed because they were destroyed in the December 1988 court fire.[2] He further claims that his efforts to obtain records from his attorney were met with obstruction, despite the fact that he filed complaints with the Disciplinary Counsel and the bar association.
In April 1999 Mr. Skaggs filed a motion for delayed appeal, which this court denied.[3] This application to reopen followed.
 DISCUSSION OF LAW
Mr. Skaggs claims that his appellate counsel was ineffective for the following reasons: (1) Counsel should have obtained a final, appealable order before this court dismissed the appeal for lack of jurisdiction. (2) Counsel ignored Mr. Skaggs' inquiries about the effect the courthouse fire would have on his case. (3) After this court remanded the case, counsel should have contacted the trial court to determine what proceedings would and should follow; the failure to do this prevented Mr. Skaggs from being at the re-sentencing proceedings and prevented him from timely pursuing his appellate remedies. (4) Counsel failed to appeal the final conviction and sentence, despite knowing Mr. Skaggs' desire to appeal. (5) Counsel withheld from Mr. Skaggs the records pertaining to his case. The gravamen of these complaints is that his counsel abandoned him after the remand, thus preventing him from properly pursuing his remedies.
In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984),466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990),497 U.S. 1011, 110 S.Ct. 3258.
In the present case counsel's performance after the remand appears to be deficient. Either he abandoned Mr. Skaggs or he failed to monitor the proceedings. The Code of Professional Responsibility in Ethical Consideration 2-30 advises that the "[f]ull availability of legal counsel requires * * * that lawyers who undertake representation complete the work involved. Trial counsel for a convicted defendant should continue to represent his client by advising whether to take an appeal and, if the appeal is prosecuted, by representing him through the appeal unless new counsel is substituted or withdrawal is permitted by the appropriate court." DR 2-110(A)(2) commands that "a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client."
In State of Ohio v. James Hammon (Dec. 2, 1997), Erie App. No. E-97-129, unreported, reopening granted (Feb. 3, 1999), the court of appeals dismissed the appeal for failing to file a praecipe and docketing statement. Mr. Hammon's appellate counsel then made several efforts to reinstate the appeal which the court rejected. However, appellate counsel failed to inform Mr. Hammon that the appeal had been dismissed. When Mr. Hammon discovered that his appeal had been dismissed for more than ninety days, he contacted the public defender who filed an application to reopen.
The court granted the application reasoning that original counsel's failure to follow the procedure in transmitting the record causing the appeal to be dismissed and the failure to inform the client of the dismissal raised a genuine issue as to whether the applicant was deprived of the effective assistance of appellate counsel. The failures prejudiced the applicant because it deprived him of even minimal appellate review.
So too in the present case, the failures to follow the proceedings after remand and to file an appeal deprived Mr. Skaggs of any appellate review. The record is devoid of any evidence that counsel obtained permission to withdraw after the remand or otherwise sought to protect his client. Thus, there is a genuine issue as to whether Mr. Skaggs was deprived of the effective assistance of appellate counsel.
App.R. 26(B)(1) and (2)(b) require applications claiming ineffective assistance of appellate counsel to be filed within ninety days from journalization of the decision unless the applicant shows good cause for filing at a later time. In the present case Mr. Skaggs' application was filed approximately nine years after this court's initial ruling in Case No. 56714. In many other cases this court has held that the lack of an attorney or the lack of a transcript fail to show good cause for late filing. However, in this case, weighing counsel's apparent abandonment of his client, the complete lack of appellate review, and the apparent irregularity of the trial court changing the conviction and resentencing the defendant without the defendant's or counsel's presence against the admittedly long delay in filing the application, this court concludes that justice would be better served by reopening the appeal. Hammon, supra; State v.Sherrills (Apr. 5, 1990), Cuyahoga App. No. 56777, unreported, reopening allowed (June 24, 1996), Motion No. 55362 and State v.Smiley (Jan. 26, 1998), Cuyahoga App. No. 72026, unreported, reopening allowed (Apr. 22, 1998), Motion No. 91903 — courts should decide cases on the merits rather than procedural technicalities. In State v. Manos (Feb. 10, 1994), Cuyahoga App. No. 64616, unreported, reopening allowed (Sept. 13, 1996), Motion No. 72558, this court noted that the "good cause" requirement is a requirement as to the content of the application; such a pleading element should not override the command of App.R. 26(B)(5) which provides that an application for reopening shallbe granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." (Emphasis added.)
In Hammon the court noted that the failure to maintain the appeal initially provided sufficient reason not to require the applicant to comply with App.R. 26(B)(2)(c) which requires the applicant to list assignments of errors not previously considered. So too in this case the failure to sustain the appeal relieves Mr. Skaggs of the duty to provide specific assignments of error. Moreover, he implies that there was insufficient evidence to sustain the verdict by claiming innocence.
Accordingly, Mr. Skaggs has raised a genuine issue as to whether he was deprived of the effective assistance of appellate counsel, and this court reopens his appeal, Case No. 56714. Attorney John B. Gibbons, 2000 Standard Building, 1370 Ontario Street, Cleveland, Ohio, 44113, (216) 363-6048, is appointed to represent Mr. Skaggs. Counsel is instructed to apply for compensation within thirty days of journalization of this court's decision.
The clerk of the courts of appeals is instructed to reassemble the record in Case No. 56714 as it was during this court's original review of the judgment entered in Case No. Cr. 227174. Applicant is granted leave to file a motion to supplement the record within thirty days of this entry.
Applicant's brief on the merits is due within sixty days of the date of this entry. Appellee's brief is due within twenty days of filing of applicant's brief. Applicant's reply brief is due within ten days of the filing of appellee's brief.
SPELLACY, J., AND SWEENEY, J., CONCUR.
 _________________________________ ANN DYKE PRESIDING JUDGE
[1] In Case No. CR-226051, a jury found Mr. Skaggs guilty of eight counts of rape and one count of gross sexual imposition. The trial court sentenced him to combined sentences of fifteen to fifty years.
[2] This statement is somewhat puzzling because this court has in its possession the trial court file and the transcript of the trial through closing arguments. It does not currently have the three exhibits or the sentencing transcript.
[3] Mr. Skaggs also filed an App. R. 26 motion for this case; this court denied that Motion on September 21, 1999.